Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>ALEJANDRO BERRÍOS RIVERA<br><br>Peticionario | KLCE202301414 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso núm.:<br>B VI2017G0002<br>B LA2017G0016<br>B LA2017G0017<br><br>Sobre:<br>Tent Art. 93-D 1ER Grado Código Penal<br>Art. 5.04 Y Art. 5.15 Ley De Armas |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de enero de 2024.

Comparece el señor Alejandro Berríos Rivera, en adelante el señor Berríos o el peticionario, y solicita que revoquemos la *Resolución* dictada por el Tribunal de Primera Instancia, Sala de Aibonito, en adelante TPI. Mediante la misma, se declaró no ha lugar su solicitud de nuevo juicio, en virtud de la Regla 192.1 de Procedimiento Criminal.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

-I-

Surge del expediente que el señor Berríos presentó una *Petición de Nuevo Juicio al Amparo de la Regla 192.1 de Procedimiento Criminal por Violación a una Representación Legal Adecuada*, en la que alegó que "el Lcdo. Orlando Aponte Rosario [fue negligente porque] no

Número Identificador

RES2024_____

realizó los esfuerzos necesarios para colocar en posición al TPI de emitir una determinación y declarar como testigo no disponible a la testigo de coartada que había declarado en [la] etapa de vista preliminar con un resultado de no causa".[1] También, adujo que el TPI "le brindó los pasos a seguir" para que, en ausencia de la testigo de coartada, declarara su padre, pero el representante legal no realizó los esfuerzos necesarios para conseguirlo. En síntesis, arguyó que de haberse declarado a la testigo de coartada como no disponible, el resultado del juicio hubiera sido distinto.

Por su parte, el Ministerio Público se opuso a la petición de nuevo juicio.[2] Contrario al peticionario, sostuvo que el Lcdo. Aponte siempre ha velado por los derechos de su cliente. Así pues, destacó que el abogado de defensa "radicó un sinnúmero de mociones interlocutorias y presentó varios recursos ante el Tribunal de Apelaciones [entre los señalamientos de error, tres guardaban relación con la defensa de coartada]… y recurrió al Tribunal Supremo…". También, alegó que, durante el juicio, este presentó argumentaciones de derecho extensas y muchas objeciones. Además, el recurrido enfatizó que el letrado interrogó ampliamente al agente a cargo de la investigación del pleito de epígrafe sobre la testigo de coartada. Del mismo modo, el Ministerio Público afirmó que, luego de que el TPI declarara no ha lugar su moción de absolución perentoria, el abogado sometió el caso, pero antes se reunió con el peticionario, por lo que se presume que el Lcdo. Aponte consultó y actuó conforme a la decisión del

---

[1] Apéndice del peticionario, págs. 55-65.
[2] *Id*., págs. 66-74.

señor Berríos. A su vez, arguyó que el peticionario no demostró que el supuesto desempeño deficiente de su abogado le causara un perjuicio, "máxime cuando la prueba documental de la alegada coartada fue admitida como exhibit en el juicio". Finalmente, adujo que los testimonios vertidos hacen poco probable que el resultado del juicio hubiera sido distinto. Por consiguiente, concluyó que el señor Berríos no cumplió con el estándar de prueba requerido en virtud de la Regla 192.1 de Procedimiento Criminal.

Posteriormente, el TPI celebró una vista sobre la solicitud de nuevo juicio, en la que a su entender, el peticionario declaró lo siguiente: el Lcdo. Aponte lo asistió en el caso; el señor Hiram Rodríguez es el padre de su pareja, la señora Roxi Sánchez, en adelante señora Sánchez (testigo de coartada); la señora Sánchez declaró, en la vista preliminar, que se dirigía hacia Patillas con el señor Berríos el día de los hechos del pleito de epígrafe; a pesar de que la señora Sánchez era su prueba más importante para probar su inocencia, el Lcdo. Aponte no hizo gestiones para citarla porque quería terminar el juicio; al momento en que el licenciado sometió el caso, el peticionario no objetó porque pensaba que solo su representante legal podía hablar; no presentó querella contra el Lcdo. Aponte, aunque no le explicó su derecho constitucional a presentar prueba; y al momento del juicio, el señor Berríos tenía problemas de pareja con la señora Sánchez, quien se encontraba en Estados Unidos, pero aun seguían en comunicación.[3]

---

[3] *Id.*, págs. 77-87.

Luego de escuchar todas las grabaciones del juicio en sus méritos y de ponderar los nueve exhibits de la defensa, sobre la coartada, además de los testimonios de dos testigos, el TPI concluyó que la representación del Lcdo. Aponte fue competente, pues consultó con su cliente la decisión de no presentar prueba adicional y someter el caso.[4]

En desacuerdo, el señor Berríos presentó una *Moción de Reconsideración*[5], en la que reiteró sus argumentos, pero el TPI la declaró no ha lugar[6].

Aun inconforme, el peticionario presentó una *Petición de Certiorari* en la que invoca la comisión del siguiente error:

> ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE NUEVO JUICIO POR VIOLACIÓN A UNA REPRESENTACIÓN LEGAL ADECUADA, A PESAR DE HABERSE ESTABLECIDO TODOS LOS REQUISITOS DE LA REGLA 192.1 DE PROCEDIMIENTO CRIMINAL Y LA JURISPRUDENCIA, QUE EL LCDO. ORLANDO APONTE DESISTIÓ DE MANERA UNILATERAL DE PRESENTAR EL TESTIMONIO DE LA TESTIGO DE DEFENSA QUE APORTABA A LA PRUEBA DE COARTADA DEL JOVEN ALEJANDRO BERRÍOS RIVERA Y HABER QUEDADO DEMOSTRADO QUE DICHA EVIDENCIA CON PROBABILIDAD ERA FAVORABLE PARA EL CASO DEL ACUSADO.

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

## -II-

### A.

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[7] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la

---

[4] *Id.*, págs. 85-87.
[5] *Id.*, págs. 89-93.
[6] *Id.*, pág. 94.
[7] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).

facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[8]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[9]

**B.**

La Regla 192.1 de Procedimiento Criminal establece en su parte pertinente:

> (a)  Quiénes pueden pedirlo. Cualquier persona que se halle detenida en virtud de una sentencia dictada por cualquier sala del

---

[8] *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón* v. *Srio. de Justicia*, 154 DPR 79, 91 (2001).
[9] *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.

Tribunal de Primera Instancia y alegue el derecho a ser puesta en libertad porque:

(1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o

(2) el Tribunal no tenía jurisdicción para imponer dicha sentencia, o

(3) la sentencia impuesta excede de la pena prescrita por la ley, o

(4) la sentencia está sujeta a ataque colateral por cualquier motivo, podrá presentar una moción a la sala del tribunal que impuso la sentencia para que anule, deje sin efecto o corrija la sentencia.

La moción para dichos fines podrá ser presentada en cualquier momento. En la moción deberán incluirse todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en esta regla. Se considerará que los fundamentos no incluidos han sido renunciados, salvo que el tribunal, con vista de una moción subsiguiente, determine que no pudieron razonablemente presentarse en la moción original.

(b) Notificación y vista. A menos que la moción y los autos del caso concluyentemente demuestren que la persona no tiene derecho a remedio alguno, el tribunal dispondrá que se notifique con copia de la moción, si se trata de una sentencia dictada por el Tribunal de Primera Instancia, al fiscal de la sala correspondiente, y si se trata de una sentencia dictada por el Tribunal de Distrito, al fiscal de la sala del Tribunal de Primera Instancia a la cual puedan apelarse las sentencias de dicho Tribunal de Distrito. El tribunal proveerá asistencia de abogado al peticionario si no la tuviere, señalará prontamente la vista de dicha moción, se asegurará de que el peticionario ha incluido todos los fundamentos que tenga para solicitar el remedio, fijará y admitirá fianza en los casos apropiados, establecerá las cuestiones en controversia y formulará determinaciones de hecho y conclusiones de derecho con respecto a la misma.

Si el tribunal determina que la sentencia fue dictada sin jurisdicción, o que la sentencia impuesta excede la pena descrita por la ley, o que por cualquier motivo está sujeta a ataque colateral, o que ha habido tal violación de los derechos constitucionales del solicitante que la hace susceptible de

> ser atacada colateralmente, el tribunal la anulará y dejará sin efecto y ordenará que el peticionario sea puesto en libertad, o dictará una nueva sentencia, o concederá un nuevo juicio, según proceda.
>
> El tribunal podrá considerar y resolver dicha moción sin la presencia del solicitante en la vista, a menos que se plantee alguna cuestión de hecho que requiera su presencia.
>
> El tribunal sentenciador no vendrá obligado a considerar otra moción presentada por el mismo confinado para solicitar el mismo remedio. [...][10]

De lo anterior se desprende que la Regla 192.1 de Procedimiento Criminal establece un mecanismo para que toda persona confinada en una institución penal pueda atacar colateralmente la validez o constitucionalidad de aquella sentencia final y firme en virtud de la cual está cumpliendo pena de reclusión.[11] Esta impugnación sólo se puede hacer a base de planteamientos de derecho, ya que no se puede utilizar el vehículo establecido por la Regla 192.1 para revisar señalamientos de error sobre hechos, ni dirigidos a cuestionar la culpabilidad o la inocencia del convicto.[12] Sólo estará disponible este mecanismo de revisión extraordinario en aquellos casos en que la sentencia esté viciada de un error de tal magnitud que entre en conflicto con las nociones fundamentales de lo que constituye un procedimiento criminal justo.[13] Dado que el propósito de la Regla 192.1 es revocar sentencias firmes, la concesión de un remedio a su amparo sólo procede excepcionalmente, requiriendo a su vez un cuidadoso ejercicio de discreción judicial.[14]

---

[10] 34 LPRA Ap. II, R. 192.1.
[11] *Pueblo v. Pérez Adorno*, 178 DPR 946, 949 (2010).
[12] *Pueblo v. Román Martir*, 169 DPR 809, 824 (2007); *Pueblo v. Rosario Paredes*, 209 DPR 155, 164 (2022).
[13] *Pueblo v. Román Martir, supra; Pueblo v. Pérez Adorno, supra*, págs. 965-966; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 371 (2020).
[14] *Pueblo v. Román Martir, supra*, págs. 827-828.

Por otro lado, cuando la petición de nuevo juicio se basa en la incompetencia del representante legal, el Tribunal Supremo de Puerto Rico ha establecido lo siguiente:

> La incompetencia enervante de la asistencia legal a que tiene derecho el acusado ha de ser de grado extremo, causante de perjuicio sustancial, al punto que sostenga la probabilidad de que de no haber incidido, el resultado del juicio hubiera sido distinto. Recae sobre el apelante el peso de la prueba de su indefensión por incompetencia del abogado…[Además]...En todo caso, firme y reiterada jurisprudencia establece que **las equivocaciones o errores del abogado de la defensa** (ya sea éste un defensor público, un abogado de oficio o un abogado que ha sido escogido y remunerado por el propio acusado) **no pueden ser invocados en apelación como fundamento para obtener una revocación del fallo o sentencia, en ausencia de mala fe, de fraude, de incapacidad física o mental, o de clara, indisculpable y grave incompetencia profesional del abogado** que representó al apelante en el juicio.

> La alegación de falta de defensa efectiva **deberá demostrar, antes de que merezca un examen a fondo, que la conducta errónea del abogado ha resultado en perjuicio de tal naturaleza que de no haberse producido, el juzgador de hechos hubiese llegado, con razonable probabilidad a conclusión distinta respecto a la responsabilidad del acusado. El tribunal de apelación debe albergar una fuerte presunción de que la conducta del defensor está comprendida dentro del amplio ámbito de una razonable asistencia legal,** y toca al apelante derrotar la presunción de que, en las circunstancias que confrontó el abogado en el juicio, su actuación impugnada puede considerarse como estrategia correcta….Una evaluación justa de la efectividad de la defensa que garantiza el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado debe guardar gran deferencia para el defensor…. El criterio final para adjudicar una reclamación de falta de efectividad en la defensa debe ser si la actuación del abogado de tal modo vulneró del adecuado funcionamiento del sistema adversativo que no pueda decirse que el juicio tuvo un resultado justo.[15]

**-III-**

El peticionario alega que la representación legal del Lcdo. Aponte fue inadecuada y lo afectó adversamente. En su opinión, el abogado no realizó los esfuerzos necesarios para que el TPI declarara como

---

[15] *Pueblo v. Bianchi Álvarez*, 117 DPR 484, 500-502 (1986). (Citas omitidas y énfasis suplido).

testigo no disponible a la testigo de coartada, que había declarado en etapa de vista preliminar con un resultado de no causa. Además, aduce que el letrado sometió su caso sin su autorización y que de haberlo representado adecuadamente, el resultado del juicio hubiera sido distinto.

Por su parte, el Ministerio Público insiste en la presunción de que los abogados se comunican con sus clientes y actúan como agentes de su representado. Por lo tanto, arguye, que en lugar de pretender que el foro intermedio resuelva a su favor con meras alegaciones, el señor Berríos debió sentar al Lcdo. Aponte como testigo en la vista evidenciaria de la Regla 192.1 y así aclarar si aquel le consultó la decisión de someter el caso. Por otra parte, argumenta que, durante el juicio, el abogado solicitó tiempo al TPI para hablar con el peticionario sobre continuar el caso sin el testimonio de la testigo de coartada y posterior a esa comunicación, expresó que tanto él como su cliente determinaron dar por sometido el caso.

Luego de revisar cuidadosamente los escritos de las partes y los documentos que los acompañan, consideramos que ni el remedio ni la disposición de la *Resolución* recurrida son contrarios a derecho. Regla 40(A) del Reglamento del Tribunal de Apelaciones, *supra*.

Conviene añadir que a nuestro entender, no medió prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro sentenciador. Regla 40(C) del Reglamento del Tribunal de Apelaciones, *supra*.

Finalmente, no existe ninguna otra circunstancia, al amparo de la Regla 40 de nuestro Reglamento, que justifique la expedición del auto.

**-IV-**

Por los fundamentos antes expuestos, se deniega la expedición del recurso de *Certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones